Vereb, Admr., *v.* Markowitz, Appellant.

Argued October 6, 1954.   Before STERN, C. J., STEARNE, JONES, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Samuel W. Pringle,* with him *John David Rhodes* and *Dalzell, Pringle, Bredin & Martin,* for appellant.

*George S. Goldstein,* for appellee.

OPINION BY MR. JUSTICE CHIDSEY, November 8, 1954:

The plaintiff, Michael J. Vereb, instituted this action in trespass as administrator of the estate of his son, Richard T. Vereb, deceased, to recover damages under the Wrongful Death and Survival Acts occasioned when Richard was fatally injured as the result of being struck by two automobiles driven respectively by the defendant, James Markowitz, and the defendant, Robert A. Peters. A jury returned verdicts against both of these defendants in the amount of $1,700 under the Wrongful Death Act and $5,000 under the Survival Act. The court entered a compulsory nonsuit as to the third defendant, Herman F. Peters, the owner of the car which Robert A. Peters was driving, there being no evidence of agency. Both of the remaining defendants filed motions for judgment non obstante veredicto and for a new trial. Subsequently the defendant Markowitz withdrew his motion for new trial. After argument the court dismissed both motions for judgment n.o.v. and the defendant Peters' motion for new trial. Peter's appeals from the judgements entered on the verdicts, assigning as error the refusal of his motions. Markowitz did not appeal.

The accident occurred about 6:30 P.M., November 10, 1951, on Main Street in the Borough of Munhall. Extending in a general north-south direction, Main Street is 36 feet in width with a street car track located in the middle. Between its intersection with Botsford Street on the north and Grace Street on the south, Main Street is intersected on the west by Walter Street. At the northwest corner of this intersection there was located a store known as the Park Super Market. There are other markets and stores north and south of Walter Street and the area is a business district and shopping center. It was well lighted by street lamps and lights from the stores. A speed limit of 25 miles per hour was posted on Main Street and both defendants were familiar with the area and testified they knew of this speed limitation. Main Street, from the testimony, was a very busy congested street, especially on Saturday evenings.

At the time of the accident, a Saturday evening, cars were parked on both sides of Main Street to the north and south of Walter Street, leaving "just enough room for two cars to pass each other in the middle of the street". Plaintiff's decedent, Richard Vereb, aged 10, and his older brother, Michael, aged 13, were making collections along a newspaper route managed jointly by the two boys. After making a collection at a house on the east side of Main Street, they proceeded to cross that street from a point approximately opposite the Park Super Market. After passing between two cars parked on the east side of the street, Michael, the older boy, continued across and reached the curb on the west side of the street, passing directly in front of the automobile of one Pingor who was parked along the west curb, and who was an eye witness of the accident. Richard, who was following his older brother across the street, reached a point somewhere in the

middle of the street when he was struck first by the one and then immediately by the other of the automobiles operated by the defendants who were driving in opposite directions. Markowitz was driving south and Peters north. Each of the cars was damaged at the left front by impact with the boy.

In establishing his case plaintiff called the two defendants as of cross-examination, and the witness Pingor. These three were the only eye witnesses of what occurred. The older boy, Michael, testified that he did not look back until he had walked across and safely reached the west curb of the street, and that then the accident had already happened. Markowitz's version of the accident was that the boy was first struck by the Peters automobile, thrown into and against the Markowitz car which in turn threw the boy back in front of the Peters car. Peters, on the other hand, testified that the boy was first struck by the Markowitz car and thrown some 12 feet into and against his car which, according to Pingor, knocked the boy forward 5 feet. Pingor corroborated Peters' version.

Appellant's able counsel contends that the unqualified uncontradicted testimony developed on behalf of the plaintiff (no testimony was adduced in defense by either defendant bearing on how the accident happened) incontrovertibly shows that there was no breach of duty owed by Peters to the plaintiff's decedent; that under the testimony it was physically impossible for the Peters car to have been the first to strike the boy. It may be conceded that under the testimony of Peters and the eye witness Pingor, recited and relied upon by appellant, it could be mathematically demonstrated that the Markowitz car was the first to strike the boy. But such conclusion rested upon oral testimony which the jury could accept or reject.

Appellant admits that under the incontrovertible physical facts doctrine no fact based on oral testimony is incontrovertible until it receives the imprimatur of a jury's acceptance (*Majewski et al v. Lempka et al.*, 321 Pa. 369, 183 A. 777; *Wermeling v. Shattuck et al.*, 366 Pa. 23, 76 A. 2d 406), but contends that the doctrine is usually applied when the incontrovertible physical facts are established as part of the evidence adduced by a defendant, and that here such facts were established by the uncontradicted testimony of the plaintiff's witnesses and must be accepted as true. But appellant overlooks other testimony adduced by the plaintiff's witnesses, especially that as to the speed at which appellant Peters was travelling. While there was testimony by Peters and Pingor indicating that the Peters car came to a stop immediately or within a few feet from the point of its impact with the boy, Pingor testified that Peters was travelling 35 or 40 miles per hour and that this speed was not decreased at any time; that Peters did not blow his horn; that when the boys emerged from between the cars parked along the east curb Peters' car was about 200 feet distant with no moving vehicles ahead of it to obstruct his view; that as the boys proceeded across the street at a "normal walk", Richard was "right in back" of Michael, "a few feet".

Appellant's counsel argues that assuming Peters was travelling at an excessive and negligent rate of speed, his speed was not a causal factor of the fatality; that the accident would have happened if Peters had been going much faster or much slower or if his car had been standing still; that Peters could not be held liable because of the speed at which he was travelling unless his speed caused a recognizable risk to the class of persons of which the decedent was a member; that the test is foreseeability, and that he was not obliged

to foresee that a pedestrian would be hurled into his car from the opposite lane of traffic. Assuming arguendo that the physical facts required the rejection of Markowitz's testimony that Peters was the first to strike the boy, and incontrovertibly established that the boy was first struck by the Markowitz car and thrown by it into the path of the Peters car, counsel's thesis is inapplicable. In our opinion plaintiff's decedent was within the class to whom there was recognizable risk. Under the conditions here present, of which the defendant Peters had knowledge, the foreseeable orbit of risk embraced all pedestrians passing back and forth across the street in this busy shopping area, including those who by fortuitous circumstance might be placed in Peters' lane of travel. Peters was bound to realize that maintaining a speed of 40 miles per hour, the rate at which the jury under the testimony could find he was travelling, in the curtailed space for vehicular traffic, might cause injury to others, although he could not foresee the exact manner in which it might occur. "If the actor's conduct is a substantial factor in bringing about harm to another, the fact that the actor neither foresaw nor should have foreseen the extent of the harm or the manner in which it occurred does not prevent him from being liable." Restatement, Torts, §435(1).

Appellant relies upon our recent decision in *Dahlstrom v. Shrum*, 368 Pa. 423, 84 A. 2d 289. The case is clearly distinguishable. There; at 10 o'clock in the evening, defendant was driving his automobile through a small, sparsely settled village, with no sidewalks and no street lights. The plaintiff and another passenger alighted from a bus and started across the street behind the bus, just as the defendant was passing it. The defendant's auto struck and killed plaintiff's companion, hurling his body through the air

against the plaintiff, causing her serious injuries. In affirming the entry of a compulsory nonsuit, Mr. Justice STEARNE, speaking for the Court, in the course of his opinion at p. 426 said: "Defendant knew he was approaching a small, sparsely settled village, with no sidewalks and no street lights and late in the evening. He could expect few, if any, persons to be in or about the village street. As he traveled through the village at thirty-five miles per hour, he noticed a motor vehicle standing still with a pair of headlights and three small lights above. It cannot be said that defendant as a reasonable man should, as matter of law, then have been aware that the vehicle he saw was a passenger bus. Defendant, called as on cross-examination, testified that he constantly had his eyes fastened upon the road. As defendant started to pass the vehicle, plaintiff and deceased were not visible and there was no warning that decedent and plaintiff were behind the bus. As defendant approached and passed the bus he was partially blinded by the glare of the headlights of the bus. Even if defendant had been aware that the vehicle was a bus, such fact in itself is no indication that two persons were in back of the bus. Had the two passengers crossed *in front of the bus,* as they should have, and where defendant could have seen them for the entire length of time it took them to walk across one lane of the road into the lane which the driver occupied, such fact then would have warned defendant of their presence. A reasonable man could have foreseen that passengers were attempting to cross the street. But such is not the fact in this case. . .".

Here the accident happened in the early evening in a well illuminated business center and active shopping district in a borough that had deemed it necessary to post a speed limit of 25 miles per hour. The jury could find that Peters was travelling 40 miles

per hour in a narrowed space for vehicular traffic, with the likelihood of shoppers entering and leaving their cars parked on both sides of the street which would be crossed by them and others. Peters saw or should have seen the deceased and his older brother emerging from the parked cars on the east and walking across the street when he was 200 feet from them with nothing to obstruct his view.

Conclusive against appellant's contention that judgment n.o.v. should have been entered is that the jury was justified in determining that the accident was the result of the concurring negligence of both car drivers, whether the Markowitz car or the Peters car was the first to strike the boy. Markowitz testified that the deceased boy was "sandwiched between both cars". After the accident the boy's body was lying in the middle of the street. The jury's verdict established that the boy was free of contributory negligence. Under the testimony the jury could well have found that the boy was placed in a position of peril by the excessive speed of the two cars approaching in opposite directions; to retreat would have placed him in the path of the Peters car; to go forward, in the path of the Markowitz car. Clearly a finding by the jury that the two car drivers jointly created the peril and were therefore jointly responsible for the fatal injuries sustained by the boy, was justified. The jury did not have to accept the version of either defendant but could form its own so long as its verdict was supported by testimony introduced.

Appellant contends that if he was not entitled to judgment n.o.v. then a new trial should have been granted, first, because the verdict was against the weight of the evidence, and secondly, because he was prejudiced by improper remarks made by plaintiff's counsel in his closing address to the jury. Appellant's

claim that the verdict was against the weight of the evidence principally rests upon the contention above discussed that the evidence established that the Markowitz car was the first to strike the boy. We are inclined to agree that the weight of the testimony tended to support such conclusion, but we cannot say that the weight of the testimony militated against a finding that the accident was the result of the concurring negligence of both defendants. In any event the matter was one for the discretion of the court below. We will not reverse unless there has been a palpable abuse of discretion: See the summarization of the applicable law in this regard by Mr. Justice JONES in *Londrino v. The Equitable Life Assurance Society of the United States,* 377 Pa. 543, 105 A. 2d 333.

As to the ground for new trial based on alleged prejudicial remarks by plaintiff's counsel in his closing speech, the court below in disposing of this contention said: "There is a strong possibility that the objection to the extraneous remarks made by counsel for plaintiff and the admonishment of counsel for plaintiff by the Court for making these remarks might have been harmful to the plaintiff's cause.". However this may be, we have carefully considered the utterances of plaintiff's counsel which, although they may be considered unjustified and improper, were not, in our opinion, so inflammable and prejudicial as not to have been sufficiently cured of adverse effect by the court's direction to the jury to disregard them.

The judgments are affirmed.