**Comte Guy DUBERN, Appellant,**

v.

**GIRARD TRUST BANK.**

**No. 19515.**

United States Court of Appeals, Third Circuit.

Argued Nov. 29, 1971.

Decided Jan. 26, 1972.

As Amended Feb. 9, 1972.

Seitz, Chief Judge, concurred in part and dissented in part and filed opinion.

**566**

C. Clark Hodgson, Jr., Stradley, Ronon, Stevens & Young, Philadelphia, Pa., for appellant.

Theodore Voorhees, Dechert, Price & Rhoads, Philadelphia, Pa. (R. Neal Risley, Philadelphia, Pa., on the brief), for appellee.

Before SEITZ, Chief Judge, and KALODNER and GIBBONS, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Circuit Judge.

Appellant, Comte Guy Dubern, a citizen and resident of France, is the universal legatee under the last will and testament of Ellen Waln de St. Marc, Marquise de Meyronnet de St. Marc. In that capacity Dubern in this diversity case sues the Girard Trust Bank over its handling of certain securities transactions on behalf of the marquise shortly before her death on February 26, 1964. Under French law a universal legatee is an approximate combination of the sole beneficiary and personal representative of a decedent's estate under Pennsylvania law.

The relationship between Girard and decedent marquise was set forth in a letter agreement dated May 10, 1946 (Exhibit P–1) establishing what Girard refers to interchangeably as a Supervised Agency Account or an Investment Advisory Account. In that agreement the decedent, referred to as the owner, directs Girard to open such an account " . . . and to hold therein as Agent for the Owner all stocks, bonds, securities, and other property, from time to time deposited . . . subject to the following instructions . . . ". The instructions refer to a semi-annual analysis of the account after review by Girard. The agreement provides, however, that "[t]he reviews made by the Company are to be supervisory only, and no action is to be taken with respect to the Account except upon the direction and sole responsibility of the Owner." It also provides that "[t]he Company, as Agent, will buy and sell stocks, bonds, or other investments comprising or to comprise the Account, upon the written direction of the Owner, or such person or persons as the Owner may from time to time designate by proper written authority." Although the management of supervised agency accounts was housed in Girard's trust department, it is clear that the relationship between the decedent and Girard was that of principal and

compensated agent, not that of settlor and trustee or cestui and trustee.[1]

On March 12, 1963 the decedent executed a written power of attorney which among other extremely broad powers authorized Dubern to withdraw funds from any bank, to sell securities of whatever kind and wherever located and to make purchases of other securities. Girard was advised of the execution of this power of attorney on March 28, 1963. It declined to acknowledge Dubern's authority over the funds in its custody for some time, however, apparently out of concern over the authenticity of the power of attorney or over the principal's capacity. On December 20, 1963, it did finally agree to acknowledge Dubern's authority to this extent:

> "It was not our intention to question the authenticity of the instrument forwarded to us by Mr. Prat. It appears, however, the effect of such a Power of Attorney in your country differs from our practice here, and some difficulties remain to our way of thinking. We are most anxious to cooperate with you in handling the Marquise's affairs, and rather than press the legal question further, we would like to offer a suggestion which may, for the present at least, resolve our difficulties in a manner satisfactory to both of us.
>
> We have no hesitancy in remitting funds from the Investment Advisory Account for deposit to the Marquise's

account in Barclay's Bank, Cannes. We would then inquire, whether, under your Power of Attorney, you could not handle any required distribution from the Barclay's account.

> \* \* \* \* \* \*
>
> We will await your instructions, although if for any reason you desire a remittance before year end, you might wire us instructions."

(Exhibit P-29).

Thus as of December 20, 1963 Girard, while acknowledging the authenticity of the power of attorney to Dubern, declined to follow his instructions to the full extent specified in the agency agreement, Exhibit P-1.

On February 1, 1964, Dubern, by a letter which was received at Girard on February 5th and translated on February 7th, instructed Girard to sell securities in order to raise $115,000 and to transfer this sum to decedent's account at Barclays Bank. The translation of this letter, Exhibit P-31, discloses that Dubern was still dissatisfied about Girard's long delay in arriving at a decision with respect to its duty to act on his instructions. He also wrote (as translated):

> "For the immediate present, I give my accord to your proposal ordering payment of funds only under my signature and solely for the benefit of the account of Ellen Waln de St. Marc, Marquise de St. Marc, with Barclays Bank, Cannes.

---

1. "These various personal agencies are different from trusts. The trust institution as agent does not have title to the property entrusted to it, the title remaining in the customer; whereas in the case of a trust the legal title vests in the institution. The agency may be terminated by either party at any time, and automatically terminates on the death of the customer. In the case of an agency the control is in the customer; whereas in the case of a trust the settlor has only such control as he has reserved by the terms of the trust. The duties and powers of the institution as agent are determined by the terms of the contract made with the customer; the duties and powers of the institution as trustee depend not only upon the terms of the trust but also upon the principles and rules of the common law and of statutes which are applicable to the trust relation. The liabilities of the institution as agent depend upon whether it has failed to use due care in the performance of the duties which it undertakes; its liabilities as trustee depend upon whether it has committed a breach of trust. Ordinarily the responsibilities of the institution are more extensive where it acts as trustee than where it acts as agent, and it may incur no liabilities as agent for conduct which would render it liable if it were trustee."
I. A. Scott, Trusts § 8.1 (2d ed. 1956) (footnotes omitted).

\* \* \* \* \* \*
Your customer may, in France, take into account her age, obtaining double the income indicated above, exempt from present and future tax. The capital indexed on the price of gold in Paris and the stocks having a very large market. On short term the risk of effective devaluation of french [sic] money is thus covered in a rather satisfactory manner."

(Exhibit P–31)

The second quoted paragraph may have lost something in translation. In any event, what Dubern had in mind was the purchase of a bond known as a Rente Pinay, issued by the government of France, indexed to gold, traded on the Paris Bourse, and having the unique characteristic that it was free of all taxation, including the payment of French succession taxes. Anticipating the transfer to Barclays Bank, he instructed that bank to make the investment in Rente Pinay as soon as the $115,-000 was received from Girard. (Exhibit P–33).

The decedent was then 83 years of age. Late in February her health deteriorated. On February 21 Dubern sent two separate cables requesting immediate transfer of funds. At his request, on that same date Barclays Bank, New York, inquired by telephone when the funds would be available. On February 26 the decedent died before the funds were transferred. Dubern was obliged to pay succession duties to the French government at the rate of 60 per cent of the net assessable value of the estate. Had the transfer been accomplished in time for purchase of the Rente Pinay bonds before decedent's death the succession duties would have been $69,000 less. He sues for this amount. In addition, since the $115,000 was still in the United States at the time of decedent's death and Girard could not transmit the funds until an estate tax return had been filed with the Internal Revenue Service here, Dubern seeks recovery of interest on the funds withheld while tax clearance was obtained.

Girard's answer admitted receipt of the February 1, 1964 letter (Exhibit P–31). It denied any breach of duty on its part and pleaded affirmatively that Dubern lacks standing to sue and that the power of attorney under which he acted was of no legal effect in February 1964. The case was tried without a jury. On October 7, 1970 the district court, without making findings of fact, entered judgment in favor of Girard. This appeal followed.

The single ground of decision of the district court, which it made without considering any other issues in the case, was that the plaintiff had failed to prove recoverable damages. The court concluded that the only permissible measure of damages for an agent's failure to comply with an order to sell stock is the decline, if any, in the value of the stock. This, we think, is an oversimplification of the problem, both with respect to the factual context and with respect to the governing Pennsylvania law.

The district court relied upon three cases, Globe Refining Co. v. Landa Cotton Oil Co., 190 U.S. 540, 545, 23 S.Ct. 754, 47 L.Ed. 1171 (1903), Keystone Diesel Engine Co., Inc. v. Irwin, 411 Pa. 222, 225, 191 A.2d 376 (1963), and Twachtman v. Connelly, 106 F.2d 501 (6th Cir. 1939).

■ *Globe Refining* and *Keystone Diesel* are applications of the familiar rule of Hadley v. Baxendale, 9 Exch. 341 (1854), that in an action for breach of contract damages are recoverable only for those injuries that the defendant had reason to foresee as a probable result of his breach when the contract was made. 5 A. Corbin, Contracts § 1007 (1964). That rule has no application to a case involving liability for breach of an agency duty, which arises out of both contract and status. Restatement (Second) of Agency §§ 15, 16 (1958). Moreover, the Hadley v. Baxendale rule comes into operation at the time of contracting. *Id.* Its application to the supervised agency account would have required notice about the French succession tax consequences of failure to follow instructions on March

12, 1963, when purchase of the Rente Pinay bonds was not even in the contemplation of the principal. The contract cases relied on by the district court are no authority for the measure of an agent's liability to his principal.

Twachtman v. Connelly, *supra*, tends to support the district court decision, since it involves a principal-agent relationship in which the agent failed to act upon instructions to sell certain shares of bank stock. The lower court limited its charge on damages to any decline in the market value of the shares. Because under the governing law stockholders of a bank were subject to a statutory assessment in the event the bank failed, the principal sought and was denied leave to amend the complaint to include as damages the amount of the statutory assessment. On appeal the Sixth Circuit said:

"No special circumstances are pled by appellant or proved to have been known to either of the parties at the time the contract was entered into from which it could have been reasonably anticipated that damages would flow from the breach other than those from an ordinary contract to sell shares in a corporation. Mere notice by appellant to appellee that she wished to sell the shares to avoid statutory liability was not enough to support an implied understanding that if appellee breached his contract, he would not only become liable for the decline in the value of the shares but in addition for the statutory liability. Globe Refining Company v. Landa Cotton Oil Company, 190 U.S. 540, 547, 23 S.Ct. 754, 47 L.Ed. 1171. The court committed no error in rejecting the amended petition." 106 F.2d at 508.

Here, as in the district court's opinion below, the misapplication of the special damage rule for contracts is evidenced by the citation of *Globe Refining*. The *Twachtman* case would seem to be a classic instance of an attempt by a principal to recover from an agent who by a breach of duty has caused the principal to be liable to a third party. Contrast the quoted language of that case with the Restatement (Second) of Agency § 401:

"An agent is subject to liability for loss caused to the principal by any breach of duty."

Comment *a* to § 401 states:

"The relation between principal and agent is always consensual but not always contractual. See § 16. A failure to perform a gratuitous promise when there has been loss because of reliance by the principal may cause the agent to be liable only in an action of tort. See § 378. On the other hand, if the sole basis for an action is a promise by the agent to act, as when the agent agrees to represent the principal for a year and fails to do so, there being no element of reliance by the principal, the latter has only an action for breach of contract. But if a paid agent does something wrongful, either knowing it to be wrong, or acting negligently, the principal may have either an action of tort or an action of contract. This is true when an agent negligently harms a chattel of the principal, *or, by negligence or fraud, causes a principal to be liable to a third person*, exceeds his authority in selling goods, or violates a duty of loyalty. This choice of remedy may be important for procedural reasons, or because of a difference between the statute of limitations for torts and for contracts." (Emphasis supplied.)

We cannot accept the *Twachtman* case as a statement of the law of Pennsylvania on the limits of an agent's liability for failure to follow instructions.

■ But neither research of the parties nor our own has discovered any Pennsylvania case [2] dealing with the proper measure of damages where a bank acting as a bailee agent holding an investment advisory account, by failing to follow instructions has subjected its principal to a tax liability which would otherwise have been avoided. We must, therefore, find the nearest analogies and the best signposts in the Pennsylvania cases.

---

2. Or indeed any other case.

*See e. g.*, Sims v. Greene, 160 F.2d 512, 515 (3d Cir. 1947).

In Kraber v. Union Ins. Co., 129 Pa. 8, 18 A. 491 (1889) an insurance agent was instructed by his principal, the underwriter, to cancel a policy and return the premium because the premium rate was unsatisfactory. He did not do so, but forwarded the net premium to the company. The loss occurring, the underwriter was required to pay, but recovered the full amount from the agent. Here, clearly, is an example of the rule that the agent will be liable for sums which because of his breach of duty his principal has been required to pay to a third party.

The full panoply of alternative remedies available to a principal is set forth in Restatement (Second) of Agency § 399.[3] That this full panoply of alternative remedies would be recognized in Pennsylvania is made clear in Pearl Assur. Co. v. National Ins. Agency, 151 Pa.Super. 146, 30 A.2d 333 (1943), holding that a suit by a principal against an agent will lie not only in assumpsit but in trespass. The opinion cites with approval this language from the first Restatement of Agency:

"§ 399. Remedies of Principal.

A principal whose agent has violated . . . his duties has an appropriate remedy for such violations. Such remedy may be:

\*   \*   \*   \*   \*   \*

(b) an action of tort . . .

§ 402(1) An agent is subject to liability to the principal for . . . money which the agent holds for the principal, and to the immediate possession of which the principal is entitled, together with interest thereon if the amount is liquidated, or damages, if the agent:

\*   \*   \*   \*   \*   \*

(b) uses it for his own purposes under an adverse claim;

(c) unreasonably refuses to surrender it on demand."

*See also* Phoenix Mutual Life Ins. Co. v. McLean, 263 F.Supp. 246, 254 (E.D. Pa.1967).

■ It seems clear, then, that as in most jurisdictions Pennsylvania does not restrict a principal's recovery to a contract measure of damages, and that payments which except for the agent's breach of duty would not have been made to third parties are recoverable from the agent. The damage law relied on by the district court is not the law of Pennsylvania applicable to the principal-agent relationship. Where an agent has breached a duty to his principal the Pennsylvania courts would apply the measure of damages which would in the circumstances most nearly make the principal whole. In instances where a negligence measure of damages is appropriate the Pennsylvania courts would follow the principles of the Restatement (Second) of Torts § 435.[4] Skoda v. West Penn Power Co.,

---

3. "A principal whose agent has violated *or threatens to violate his duties has an* appropriate remedy for such violation. Such remedy may be:
   (a) an action on the contract of service;
   (b) an action for losses and for the misuse of property;
   (c) an action in equity to enforce the provisions of an express trust undertaken by the agent;
   (d) an action for restitution, either at law or in equity;
   (e) an action for an accounting;
   (f) an action for an injunction;
   (g) set-off or counterclaim;
   (h) causing the agent to be made party to an action brought by a third

person against the principal;
   (i) self-help;
   (j) discharge; or
   (k) refusal to pay compensation or rescission of the contract of employment."

4. "Foreseeability of Harm or Manner of Its Occurrence
   (1) If the actor's conduct is a substantial factor in bringing about harm to another, the fact that the actor neither foresaw nor should have foreseen the extent of the harm or the manner in which it occurred does not prevent him from being liable.
   (2) The actor's conduct may be held not to be a legal cause of harm to

411 Pa. 323, 191 A.2d 822, 827 (1963); Vereb v. Markowitz, 379 Pa. 344, 108 A. 2d 774, 777 (1954). *See also* Restatement (Second) of Torts § 454. Assuming a breach of duty these principles would permit recovery here, for certainly it does not appear highly extraordinary that adverse tax consequences might flow from a failure to follow an instruction to sell securities and transmit funds. Which of the several theories set forth in the Restatement (Second) of Agency § 399 is appropriate in this case will depend upon the findings of fact made by the district court.

Girard suggests that even if the district court misconceived the applicable rule of damages its judgment dismissing the complaint should nevertheless be affirmed (1) because no breach of duty was established and (2) because Dubern was guilty of contributory negligence.

█ We cannot consider these grounds because both depend upon findings of fact which the district court did not make. We cannot substitute our judgment on factual matters for that of the trier of fact who heard the witnesses. Fed.R.Civ.P. 52(a); *cf.* Plack v. Baumer, 121 F.2d 676 (3d Cir. 1941).

█ Girard has not on this appeal briefed, though it did argue, its separate defense that Dubern lacks standing to bring this suit. We have considered that contention because the same issue of standing is presented with respect to the appeal. As the Girard brief points out (brief of appellee at 2, n. 2), a universal legatee under French law is an approximate combination of the sole beneficiary and the personal representative of decedent's estate under Pennsylvania law. In the capacity of beneficiary the argument goes, he lacks standing because he was not the agent's principal. In the capacity of personal representative he lacks standing because the estate suffered no loss since under French law the succession duties are collected not from the decedent's estate but from the legatee. This heads-I-win-tails-you-lose dichotomy simply does not comport with what we think would be a Pennsylvania court's sense of justice. If because of an agent's breach of duty taxes were paid which except for that breach need not have been paid then in one capacity or the other or both Dubern has standing to seek recovery.

The judgment will be reversed and the case remanded to the district court which shall make findings of fact and conclusions of law in the light of this opinion.

SEITZ, Chief Judge (concurring in part and dissenting in part).

The district court dismissed the complaint on the single ground that the plaintiff failed to prove recoverable damages. The basis for its ruling was that the particular risk of loss was not reasonably foreseeable when the principal's instructions were given. Insofar as the complaint sounds in contract, I agree with the district court's disposition as a matter of fact and of Pennsylvania law. However, this does not end the matter because plaintiff also asserted a negligence claim against defendant.

A principal may sue his agent in tort as well as contract. Restatement, Second, Agency Chapter 13, Topic 1. Duties. When he does so in Pennsylvania the reasonably foreseeable test is inapplicable because that state has adopted the "Substantial Factor" rule of the Restatement, Second, Torts § 435, quoted the opinion of the court. I would therefore affirm the judgment insofar as the contract claim is concerned but reverse and remand for a determination of the issue of tort liability and, if found, whether damages were established under the Restatement Rule.

another where after the event and looking back from the harm to the actor's negligent conduct, it appears to the court highly extraordinary that it should have brought about the harm."