**PITNEY–BOWES, INC., Plaintiff,**

v.

**Luis MESTRE, Defendant.**

**No. 78–1097–Civ–SMA.**

United States District Court,
S. D. Florida,
Miami Division.

April 14, 1980.

William J. Dunaj, Mershon, Sawyer, Johnston, Dunwody & Cole, Miami, Fla., for plaintiff; Fish & Neave, New York City, William D. Soltow, Jr., Stamford, Conn., of counsel.

Karl V. Hart, Shutts & Bowen, Miami, Fla., for defendant.

## ORDER

ARONOVITZ, District Judge.

Asserting jurisdiction under 28 U.S.C. § 1332 and seeking relief pursuant to 28 U.S.C. § 2201 and 2202, Plaintiff, Pitney-Bowes, Inc. [P–B], commenced this action, requesting a declaration of its rights and liabilities under certain contractual agreements with Defendant, Luis Mestre [Mestre]. Briefly stated, P–B seeks a declaration that the agreements in question have expired and, therefore, that it is no longer required to pay royalties established by those agreements. Alternatively, P–B maintains that Mestre seeks to claim royalties beyond the life of the patents which allegedly underlie the agreements, that such an arrangement is contrary to public policy and, therefore, should be declared null and void. Mestre answered, contending, first, that the contractual agreements had not expired and, secondly, that the agreements were not limited to patent rights but, rather, encompassed trade secrets and prototypes to which the statutory life-term of patents does not apply.

In December, 1978, Mestre served P–B with a Request for Production of Documents. Fed.R.Civ.P. 34. P–B complied in part, but likewise served (and later supplemented) a list of documents withheld from production as subject to the attorney-client privilege. Following a hearing before the Court, a Stipulated and Agreed Protective Order was entered on October 16, 1979, under which P–B delivered fifty-seven (57) allegedly privileged documents for Mestre's review, but reserving the right to assert the attorney-client privilege. Mestre's counsel demanded production of twenty-five (25) of those documents. P–B then withdrew its claim of privilege as to eight (8) of the twenty-five (25) documents. The issue before the Court, therefore, is whether the attorney-client privilege attaches to the remaining seventeen (17) documents, thereby immunizing them from discovery in this litigation.

The Court has reviewed each of the documents in issue, the extensive memoranda of law submitted by the parties, applicable portions of the court record, and has heard oral argument. For the reasons set forth below, Defendant Mestre's Motion to Com-

pel Production of Documents is GRANTED IN PART and DENIED IN PART.

This Court is keenly cognizant of the oft-quoted and widely approved standard for determining the applicability of attorney-client privilege as set forth by Judge Wyzanski in *U. S. v. United Shoe Machinery Corp.*, 89 F.Supp. 357, 358 (D.C.Dist. of Mass.1950):

> The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

Applying this standard and the test set forth in *Garner v. Wolfinbarger*, 430 F.2d 1093, 1099 (5th Cir. 1970), the Court finds and hereby rules that P–B's Objections to the Motion to Compel, based upon the assertion of the attorney-client privilege, is sustained in the instances of documents designated W 2, W 36–42, W 52–58, W 65–67, W 158 and W 170.

With regard to the remaining documents, namely W 9–10, W 30, W 47–48, W 68–75, W 77–81, W 89–90, W 113–117, W 118–119, W 135–140, W 141, and W 148–150, Mestre's Motion to Compel is GRANTED and the Objections asserted on the basis of attorney-client privilege are DENIED.

▮▮▮ The attorney-client privilege applies here under Fed.R.Civ.P. 26(b)(1), embodying the common law of privilege as interpreted by the courts of the United States. The privilege extends to communications from the attorney to the client, as well as the reverse. It is limited to communications intended to be confidential and some showing of intention of security must be met, that is, the mere relationship of attorney and client does not raise a presumption of confidentiality. The presence of third persons who are not essential to the transmittal of information negates the necessary element of confidentiality. The privilege, however, was intended as a shield, not a sword.

Mestre attacks the application of the attorney-client privilege on several grounds, specifically, that some documents are neither written by nor addressed to counsel (W 77–81 and W 148–150); that the privilege has been waived by selective production of documents addressed to or written by counsel; that the privilege has been waived by use of documents to refresh witnesses' recollections; that counsel acting as a negotiator rather than as legal counsel; and because of the absence of confidential information received from client. Some of these asserted bases have varying degrees of relevancy and applicability to this ruling which allows the discovery of some allegedly privileged documents. However, the main thrust of this ruling, as argued by Mestre and applied by the Court, stems from the principle that the attorney-client privilege may be waived and that it has been waived here by the actions of P–B through issue injection.

The Fifth Circuit in *Laughner v. U. S.*, 373 F.2d 326, 327 (5th Cir. 1967) stated:

> The privilege is not an inviolable seal upon the attorney's lips. It may be waived by the client; and where, as here, the client alleges a breach of duty to him by the attorney, we have not the slightest scruple about deciding that he thereby waives the privilege as to all communications relevant to that issue.

There,* the Court held the attorney-client privilege waived because defendant injected the very issue which required testimony

---

* The Court is aware *Laughner* is a criminal case but finds the analysis used there to be instructive here.

from his attorney, that is, that his court-appointed counsel failed to properly discharge his responsibilities. The Court reasoned that despite the privilege accorded defendant's confidential communication between an attorney and his client, that privilege, if applied there, would have served to eliminate the one source of evidence likely to contradict his allegations. *See also Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D.Wash. 1975), in which the court points out:

All of these established exceptions to the rules of privilege have a common denominator; in each instance, the party asserting the privilege placed information protected by it in issue through some affirmative act for his own benefit, and to allow the privilege to protect against disclosure of such information would have been manifestly unfair to the opposing party.

In *Hearn*, the court further characterized factors common to decisions applying issue injection as follows:

The factors common to each exception may be summarized as follows: (1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense. Thus, where these three conditions exist, a court should find that the party asserting a privilege has impliedly waived it through his own affirmative conduct.

Here, P–B has injected a narrow issue into the dispute, namely, *the intent of the parties*. In seeking arbitration prior to the commencement of this litigation, Mestre did not raise this issue since he merely sought arbitration of his royalty claims as per the apparent terms of the Agreements. On the other hand, P–B thereafter filed this law suit and asserted that it had intended to enter into modifications of pure patent licensing agreements. It then sought to withhold communications between its attorneys and executives that might reveal the true intent behind the agreements. P–B has placed in issue the very soul of this litigation—the intent of the parties with regard to construction of certain terms of the Agreements. "The injury that would inure to the relation by the disclosure of the communications must be greater than the benefit thereby gained for the correct disposal of the litigation," Professor Wigmore teaches in listing that as one of four fundamental conditions necessary to the establishment of a privilege. 8 Wigmore, Evidence 2285. In *Garner, supra*, the Fifth Circuit approvingly quoted Professor Wigmore's position that only if these four conditions are present should a privilege be recognized. Here, there is no doubt that "the injury" is not "greater than the benefit thereby gained for the correct disposal of the litigation." The balancing of interests tilts heavily in favor of Defendant Mestre's arguments here. The withheld documents are replete with references to points in time to which the contracts allegedly extended well beyond P–B's assertions. *See also Jack Winter v. Koratron Co.*, 50 F.R.D. 225 (N.D.Cal.1970); *Gorzegno v. Maguire*, 62 F.R.D. 617 (S.D.N.Y.1973). There is no other apparent source of direct proof going to the issue at hand.

As to the admissibility of some of the documents post-dating the contracts, Mestre argues that P–B only asserted its "interpretation of the agreements" argument when P–B was unable to convince Mestre to reduce the royalties and thereupon conceived this argument to provide a basis for discontinuing royalty payments altogether. Some of the later withheld documents provide some support for Mestre's theory, for it seems to be clear that various P–B executives were projecting royalty payments into the 1980s *after* the expiration of the patents. *See*, e. g., W 78.

W 30 dated December 8, 1965, is a memo written by a P–B executive without an addressee.

W 118–119 written September 3, 1976, in the main consists of business and economic advice, as does W 135–140.

W 141 has a very broad distribution to at least twelve persons who were copied in addition to the addressee.

Thereupon, it is

ORDERED AND ADJUDGED that the Objections of P–B to the Request for Production of Documents designated as W 2, W 36–42, W 52–58, W 65–67, W 158 and W 170 be and the same are hereby GRANTED. It is

FURTHER ORDERED AND ADJUDGED that the remaining Objections of P–B to the Request for Production of Documents are Overruled and the Plaintiff is found to have waived the right to assert the attorney-client privilege with regard to these documents.