**GAB BUSINESS SERVICES, INC., Plaintiff-Appellant, Cross Appellee,**

v.

**SYNDICATE 627, James Neil, Eric Butcher, Defendants-Appellees, Cross Appellants.**

No. 85–3879.

United States Court of Appeals, Eleventh Circuit.

Feb. 12, 1987.

---

John N. Bogdanoff, Haas, Boehm, Brown, Rigdon, Seacrest & Fischer, Daytona Beach, Fla., for plaintiff-appellant, cross appellee.

Francis E. Pierce, III, Gurney & Handley, Kathryn D. Mackinnon, Orlando, Fla., and James A. Ellis, Jr., Carrington, Coleman, Sloman & Blumenthal, Dallas, Tex., for defendants-appellees, cross appellants.

Before HILL and VANCE, Circuit Judges, and BROWN,[*] Senior Circuit Judge.

VANCE, Circuit Judge:

This case involves a dispute between an insurer, Syndicate 627,[1] and its claims adjuster, GAB Business Services, over liability following the death under suspicious circumstances of an insured racehorse. A district court jury held for 627, both rejecting GAB's claim against 627 and finding for 627 on its counterclaim. We affirm the judgment against GAB's claim, reverse the judgment in favor of 627's counterclaim and remand for a new trial on the counterclaim.

I. *Facts and Procedural History*

The star of this litigation is a racehorse, now deceased, by the name of Paul F. Bar—75. The horse's owner, JDA Farms, held a mortality insurance policy on the horse, issued by Syndicate 627 in mid–1979. The policy covered only the actual value of the horse up to a maximum of $250,000. The horse may not have been worth nearly this amount.

In August 1979, upon learning that the horse had been injured, Syndicate 627 contracted with GAB's Miami office to investigate the injury and protect 627's interest in the horse. Because the horse was at a small rural racetrack in Michigan, GAB assigned the matter to Little, the manager of its Jackson, Michigan office. Little had never handled a matter involving an injured, highly insured horse.

There may be an insurance risk whenever an insured racehorse is injured, even if the injury is not life threatening. If a horse can no longer race, its owner may conclude that it is worth more dead than alive.[2] Little, however, did not remove the horse from the racetrack. He asked the trainer at the racetrack to ship the horse to Michigan State University for an examination on September 6, but the shipment was not made. Little obtained another promise from the trainer to deliver the horse by September 10, but again the shipment was not made. Little did not obtain a medical exam until September 15. That examination, conducted at the track by a veterinarian from Michigan State, revealed that the injury to the horse's leg was serious and that, although the horse's life was not in danger, its prognosis for racing was limited. Despite the veterinarian's recommendation, Little did not arrange for the horse to be taken from the racetrack.

Finally, on September 18, Little informed the veterinarian that the animal would be shipped to Michigan State that day. Even though other horse transporters were available to make the shipment, Little relied on the trainer who had broken two promises to remove the animal from the track. The trainer again failed to deliver the animal.

The next day Little went to the track and found that the horse was dead. He arranged to have the carcass shipped to Michigan State for an autopsy, which revealed that the horse had ingested a poisonous substance. One veterinarian concluded from the autopsy results that the horse had been intentionally poisoned. Others were uncertain.

Apparently on the basis of the autopsy, 627 decided not to honor the insurance policy held by JDA Farms. JDA Farms filed suit in Florida state court against both 627 and GAB. GAB settled the action just before trial for $15,000 and agreed as part of the settlement to release to JDA Farms certain confidential reports GAB had prepared for 627. Shortly after GAB's settlement, 627 also settled with JDA Farms,

---

[*] Honorable John R. Brown, Senior U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

[1.] Syndicate 627 is an insurance underwriter which operates through Lloyds of London. The syndicate's lead member, James Neil Eric Butcher, is also a party to this action.

[2.] Little acknowledged at trial that he eventually came to realize this risk.

agreeing to pay the full $250,000 policy limit.[3]

GAB then brought this suit in Florida state court seeking reimbursement from 627 for the expenses of its settlement with JDA Farms. The syndicate removed to the district court for the Middle District of Florida and filed a counterclaim, seeking to recover its own settlement expenses from GAB. A jury held against GAB on its claim and for 627 on the counterclaim. GAB appealed and 627 cross-appealed.

On appeal GAB contends that it was entitled to a directed verdict in favor of its claim and against 627's counterclaim. GAB also complains of the district court's evidentiary and discovery rulings. Syndicate 627 seeks to advance various contentions on cross-appeal, but as a prevailing party, it may only complain of the lower court's award of damages. We need not rule on the issue of damages because we reverse with respect to 627's counterclaim.

We hold that the district court correctly refused GAB's motion for directed verdict on its claim. We also hold that 627 failed to prove an essential element of its counterclaim and that the lower court erroneously refused GAB discovery into the evidentiary background of that same issue. To clarify our holding, however, we must set forth in some detail the principles of law governing the respective claims of the parties.

## II. *GAB's Claim*

■ GAB claimed indemnity as 627's agent for the costs of its settlement with JDA Farms and argues that the district court erred in not directing a verdict against 627. A principal has a duty to indemnify its agent for the "expenses of defending actions by third persons brought because of the agent's authorized conduct."

Restatement (Second) of Agency § 439 (1958). There is, however, an exception to this general rule. A principal has no duty to indemnify an agent whose loss is "caused solely by the agent's negligence, whether or not the negligence constitutes a breach of duty to the principal." Restatement (Second) of Agency § 440 comment b; *see e.g., Brady v. Roosevelt Steamship Co.,* 317 U.S. 575, 580, 63 S.Ct. 425, 428, 87 L.Ed. 471 (1943) ("liability of an agent for his own negligence has long been embedded in the law"); *cf. Occidental Fire and Casualty Co. of North Carolina v. Stevenson,* 370 So.2d 1211, 1213 (Fla.Dist.Ct.App. 1979). GAB contends that this exception does not apply because any negligence on the part of GAB could not have been the proximate cause of JDA Farms' suit and the resulting settlement.[4]

The thrust of GAB's argument is that for its conduct to have caused the JDA Farms suit, the horse must have been intentionally poisoned. GAB contends that this criminal act is a superseding, intervening cause which breaks the chain of causation. *See, e.g., Gulfstar, Inc. v. Advance Mortgage Corp.,* 376 So.2d 243, 246 (Fla. Dist.Ct.App.1979) (unauthorized sale of boat), *cert. denied,* 386 So.2d 633 (1980). According to Florida law, however, an event, including a criminal act, breaks the chain of proximate causation only if it is outside "the zone of risks that are reasonably foreseeable by the defendant." *See Stevens v. Jefferson,* 436 So.2d 33, 35 (Fla. 1983) (quoting *Crislip v. Holland,* 401 So.2d 1115, 1117 (Fla.Dist.Ct.App.1981)) (where fights and "gunplay" in bar created foreseeable risk of harm to patrons, defendant bar owner was liable for gunshot death of patron caused by fellow patron). "[I]f reasonable men might differ, the determination of foreseeability should rest

---

**3.** The settlement may nevertheless be viewed as a compromise because 627 might have been liable to JDA Farms for attorneys' fees and punitive damages as well as the amount due under the policy.

**4.** In other circumstances, Florida courts have adopted the rule that "the rights of a party to indemnification will be denied where his own

wrongful act or omission proximately contributes to the injury complained of." *Stuart v. Hertz Corp.,* 351 So.2d 703, 705 (Fla.1977); *see also Perkins State Bank v. Connolly,* 632 F.2d 1306, 1314 n. 6 (5th Cir.1980). We leave open the question of whether application of this tort concept is appropriate where a negligent agent demands indemnity from its principal.

with the jury." *Schwartz v. American Home Assurance Co.*, 360 So.2d 383, 385 (Fla.1978).

The jury could have found that GAB's negligence caused the death of the horse and that 627 had employed GAB to guard against this very risk. The evidence presented was of such "quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions" on whether GAB's conduct fell short of the appropriate standard of care and whether it proximately caused the resulting litigation. *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir. 1969) (en banc). The argument that GAB was entitled to a directed verdict on its claim against 627 is clearly without merit.

### III. *627's Counterclaim*

The jury found that GAB's negligence resulted in a loss to Syndicate 627 of $200,-000. 627 notes that this sum corresponds to its attorneys fees in the JDA Farms case and argues that the trial court erred in failing to award a full breach of contract measure of damages.[5] 627 argues that such an award should include its settlement with JDA Farms and the expense of GAB's investigation after the destruction of the carcass. 627 also disputes the lower court's decision to exclude evidence relating to 627's decision to pay JDA Farms the full $250,000 policy limits in settlement. 627 contends that the court should have admitted expert testimony regarding the strength of JDA Farms' case. On the other hand, GAB complains that the trial court improperly allowed 627 to cloak the substance of its settlement negotiations within the attorney-client privilege.

We begin by noting that there is no question but that 627 may seek indemnity from GAB for a liability accruing from GAB's negligent conduct as agent. *United States v. Farr & Co.*, 342 F.2d 383, 385 (2d Cir.1965). GAB owed its principal a duty to act with care, diligence and skill. *Twachtman v. Connelly*, 106 F.2d 501, 507

(6th Cir.1939); *Central National Insurance Co. of Omaha v. Devonshire Coverage Corp.*, 426 F.Supp. 7, 23 (D.Neb.1976) (citing Restatement (Second) of Agency § 379 (1958)), *aff'd in part, rev'd in part on other grounds*, 565 F.2d 490 (8th Cir. 1977). A breach of this duty subjects GAB as agent to liability for its principal's resulting loss. *United States v. Farr & Co.*, 342 F.2d at 385 (citing Restatement (Second) of Agency § 401); *Irby Construction Co. v. Shipco, Inc.*, 548 F.Supp. 1023, 1028 (E.D.La.1982). When a paid agent acts negligently so as to cause its principal to become liable to a third person, the principal may bring an action against the agent either in tort or for breach of contract. *Dubern v. Girard Trust Bank*, 454 F.2d 565, 569 (3d Cir.1972) (citing Restatement (Second) of Agency § 401 comment a); *see, e.g., Pegg v. Bertram*, 176 So.2d 918, 921 (Fla.Dist.Ct.App.1965), *cert. denied*, 184 So.2d 887 (1966).

627 claims that GAB's negligence initiated a chain of events that caused the syndicate's liability to JDA Farms. Specifically, 627 argues that GAB did not act promptly to contact a veterinarian and to remove the horse from an environment where it could fall victim to foul play. Syndicate 627 contends that this dereliction of duty resulted in the death of the horse and the syndicate's resulting liability on the insurance policy.

The extent of GAB's liability, if any, can be determined in accordance with ordinary principles of contract law. Restatement (Second) of Agency § 400. Ordinarily, 627 can recover the damages resulting from GAB's negligence providing that such damages might be "reasonably supposed to be in the contemplation of the parties at the time of making the contract." *Globe Refining Co. v. Landa Cotton Oil Co.*, 190 U.S. 540, 544, 23 S.Ct. 754, 765, 47 L.Ed. 1171 (1903) (citations omitted); *Twachtman v. Connelly*, 106 F.2d 501, 508 (6th Cir.

---

5. The district court did not give a breach of contract jury instruction or verdict form.

Nevertheless, there is no showing the jury failed to consider all of 627's damages.

1939).[6] Since Florida does not restrict a principal's recovery to a contract measure of damages, 627 could also seek a recovery in tort for losses proximately caused by GAB's negligence. *Pegg v. Bertram*, 176 So.2d at 921; *see also Dubern v. Girard Trust Bank*, 454 F.2d at 569–70 (similar result under Pennsylvania law).[7]

The operation of these principles becomes complicated when the loss complained of results from a settlement. In this case, 627 settled with JDA Farms for the full policy limits of $250,000, even though the horse had been purchased for $7,500 and one expert witness placed its actual value at less than $10,000. Settlements are to be encouraged. It would nevertheless offend due process if an indemnitee's unilateral acts could bind the indemnitor without notice and an opportunity to be heard. *Jennings v. United States*, 374 F.2d 983, 986 (4th Cir.1967). "Deciding whether to try a case to judgment or to settle it involves elements of legal evaluation, of financial capacity to take risk, and of appetite for court room conflict which vary widely among litigants." *Whisenant v. Brewster-Bartle Offshore Co.*, 446 F.2d 394, 402 (5th Cir. 1971) (quoting *Tankrederiet Gefion A/S v. Hyman-Michaels Co.*, 406 F.2d 1039, 1043–44 (6th Cir.1969)). GAB cannot be compelled to accept 627's evaluation of these critical factors. *Id.*

■ Established doctrine provides a framework for resolving the conflict between the policies of encouraging settlements on one hand and protecting the interests of the indemnitor on the other:

> A practical device by which an indemnitee can protect himself against the awkward possibility of having to prove the original plaintiff's case against himself, the original defendant, is to offer the indemnitor before any settlement is concluded the choice of (1) approving the

settlement or (2) taking over the defense of the case and agreeing to hold the indemnitee harmless in any event for damages which may be assessed against him in excess of the amount of the proposed settlement.

*Parfait v. Jahncke Service, Inc.*, 484 F.2d 296, 304–05 (5th Cir.1973) (citation omitted), *cert. denied*, 415 U.S. 957, 94 S.Ct. 1485, 39 L.Ed.2d 572 (1974). Instead of requiring that the indemnitee offer this precise choice, we have looked to see whether the indemnitor has been "afforded substantially the same protection" as if this procedure had been followed. *Id.* at 305; *Burke v. Ripp*, 619 F.2d 354, 357 (5th Cir.1980). We have not required proof of actual liability where an indemnitee informs the indemnitor of a proposed settlement and the indemnitor fails to object. *Burke v. Ripp*, 619 F.2d at 357; *Parfait v. Jahncke Service, Inc.*, 484 F.2d at 305. In contrast when the indemnitee has not given the indemnitor an opportunity to review, pass upon, or participate in the settlement, due process and "equitable indemnity principles" compel a demonstration of actual as opposed to potential liability. *Whisenant v. Brewster-Bartle Offshore Co.*, 446 F.2d at 403; *Parfait v. Jahncke Service, Inc.*, 484 F.2d at 305 ("indemnitee has the special problem of showing that his disposition of the indemnitor's funds has not contravened equitable indemnity principles"); *see also Morris v. Federated Mutual Insurance Co.*, 497 F.2d 538, 543–44 (5th Cir.1974); *Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1216 (5th Cir.1986); *Atlantic Richfield Co. v. Interstate Oil Transport Co.*, 784 F.2d 106, 112–13 (2d Cir.1986), *cert. denied*, — U.S. ——, 107 S.Ct. 75, 93 L.Ed.2d 31 (1986); *Tankrederiet Gefion A/S v. Hyman-Michaels Co.*, 406 F.2d 1039, 1042 (6th Cir.1969); *cf. M & O Marine, Inc. v. Marquette Co.*, 730 F.2d 133, 135–36 (3d Cir. 1984).

---

6. *Dubern v. Girard Trust Bank*, 454 F.2d 565, 569, rejected that portion of *Twachtman* that *limited* the principal to a breach of contract measure of damages.

7. GAB urges that even if its negligence caused the horse's death it should not be liable because the insurance policy would not cover a poisoning. Our analytical framework affords GAB ample opportunity to vindicate such contentions.

■ The record does not indicate whether 627 afforded GAB sufficient opportunity to review the contemplated settlement. If GAB did not have such an opportunity, 627 had the burden of proving actual liability:

> If [adequate] notice ... is not given, then, in a subsequent proceeding to obtain indemnity, the plaintiff must establish his claims for damages without reference to the amount of the judgment in the prior action against him (31 C.J. 453, 463, sections 53, 62); in other words, under such circumstances the plaintiff in the second suit is not barred from recovery, but there is placed on him the burden of justifying his payment of damages to the person who sued him, *by offering against the defendant in the second suit practically the same evidence as was relied on to establish the case against him, the plaintiff, when he was defending the first suit.*

*Hull & Co. v. McGetrick,* 414 So.2d 243, 245 (Fla.Dist.Ct.App.1982) (emphasis in original) (quoting *Orth v. Consumers' Gas Co.,* 124 A. 296, 297 (Pa.1924)); *see also Crystal River Enterprises, Inc. v. Nasi,* *Inc.,* 399 So.2d 77, 79 (Fla.Dist.Ct.App. 1981) (indemnitee must "establish all actionable facts" because indemnitor did not have an opportunity to defend).[8] Accordingly, 627 was then in the ironic position of having to prove JDA Farms' case against itself and could only recover that part of the settlement that corresponds to an actual liability[9] caused by GAB's breach of duty.

If on the other hand GAB received adequate protection during the settlement negotiations, 627 was required to show only potential liability. In either event 627 could only recover so much of the settlement as it proved was reasonable in amount, *Parfait v. Jahncke Service, Inc.,* 484 F.2d at 305; *Atlantic Richfield Co. v. Interstate Oil Transport Co.,* 784 F.2d at 112,[10] and a consequence of GAB's breach of duty.

Depending upon whether there was adequate notice to GAB, 627's burden was to prove actual or potential liability to JDA Farms. In either case, expert testimony and other evidence relating to the strength

---

**8.** Florida appellate courts have on occasion applied less exacting standards than those we adopt in this opinion. *See e.g., Post Houses, Inc. v. Fireman's Fund Ins. Co.,* 469 So.2d 863, 864 (Fla.Dist.Ct.App.) (amount of settlement conclusive against indemnitor who "has notice of suit against his indemnitee, and is afforded an opportunity to appear and defend"), *review denied,* 478 So.2d 54 (1985); *Atlantic Coast Development Corp. v. Napoleon Steel Contractors, Inc.,* 385 So.2d 676, 681 (Fla.Dist.Ct.App.1980) ("a showing [of reasonableness] is only required when a settlement has been entered into without notice or the indemnitor has not had an opportunity to defend") (citing *MacArthur v. Gaines,* 286 So.2d 608 (Fla.Dist.Ct.App.1973)). We are not aware of any instance where the Florida Supreme Court has addressed this issue. In the absence of a definitive pronouncement from the Florida high court, we are obliged to follow our own most recent interpretation of Florida law in *Burke v. Ripp,* 619 F.2d 354 (5th Cir.1980).

**9.** Alternatively, 627 argues that GAB's breach of duty augmented the syndicate's liability to its insured by increasing the settlement value of JDA Farms' case. These allegations center on the confidential reports GAB prepared for 627, but released to JDA Farms as part of GAB's settlement. In these reports, GAB consistently listed the horse's value at $250,000. In reality GAB had done nothing to value the horse. The district court erred in excluding certain stipulated facts regarding GAB's release of these reports. This is evidence the jury is entitled to consider in determining whether GAB breached its fiduciary duty as agent and whether GAB's breach of duty caused 627's settlement.

Assuming arguendo that the release of these discoverable documents had any effect on the settlement negotiations between 627 and JDA Farms, the maximum extent to which GAB could be liable is the added cost brought about by GAB's breach of duty. 627 must still prove that its settlement was reasonable and that it faced an actual or potential liability.

**10.** Whether a settlement is reasonable depends upon "what a reasonably prudent person in the position of the defendant would have settled for on the merits of the plaintiff's claim." *Home Insurance Co. v. Advance Machine Co.,* 443 So.2d 165, 168 (Fla.Dist.Ct.App.1983) (quoting *Miller v. Shugart,* 316 N.W.2d 729, 735 (Minn. 1982)). In determining whether a settlement is reasonable, a Florida court would consider not only such objective factors as the extent of damages, but also such subjective factors as the certainty of liability, the risks of going to trial and the chances that the jury verdict might exceed the settlement offer. *Id.* at 168–69.

of JDA Farms' claim was not only relevant, but absolutely essential. At trial 627 introduced no evidence whatever to establish why it settled and whether the settlement was reasonable. The record reveals that 627's failure to introduce the necessary evidence was due in part to an erroneous ruling that such evidence was inadmissable. We must therefore remand for a new trial instead of simply directing that judgment be entered for GAB.

■ During discovery GAB attempted to question one of 627's attorneys who was involved in the settlement negotiations concerning the substance of these negotiations and the motivation behind them. This attorney refused to answer, and the court denied GAB's motion to compel discovery. The court also refused GAB's attempts to question witnesses about 627's investigation into JDA Farms' claim.

In the ordinary case, inquiry of the type sought by GAB might be foreclosed by the attorney-client privilege. The privilege, however, "was intended as a shield, not a sword." *Pitney-Bowes, Inc. v. Mestre*, 86 F.R.D. 444, 446 (S.D.Fla.1980). If 627 introduces evidence as to the strength of JDA Farms' case—as 627 must to prevail—it cannot hide behind the shield of privilege to prevent GAB from effectively challenging such evidence. "[I]t is the rule in Florida that a party who bases a claim on matters which would be privileged, the proof of which will necessitate the introduction of privileged matter into evidence, and then attempts to raise the privilege so as to thwart discovery, may be deemed to have waived that privilege...." *Home Insurance Co. v. Advance Machine Co.*, 443 So.2d 165, 168 (Fla.Dist.Ct.App.1983) (citing *Savino v. Luciano*, 92 So.2d 817, 819 (Fla.

1957)); [11] *see also* Fed.R.Evid. 501 (state law determines privilege when state law supplies rule of decision). Syndicate 627 waives its attorney-client privilege when it injects into this litigation an issue that requires testimony from its attorneys or testimony concerning the reasonableness of its attorneys' conduct. *See, e.g., Laughner v. United States*, 373 F.2d 326, 327 (5th Cir.1967); *Pitney-Bowes, Inc. v. Mestre*, 86 F.R.D. at 446–47. The district court should have allowed discovery into 627's motivation for settling with JDA Farms. The district court's contrary ruling on this issue independently necessitates reversal.

■ If the counterclaim is retried, certain additional evidence, excluded by the district court, must also be admitted. The crux of 627's counterclaim as it relates to attorneys' fees is that GAB's breach of duty caused 627 to pay these fees. Syndicate 627 cannot recover for services that were essentially irrelevant or extravagant. A valid claim can be made, however, for attorneys' fees that were reasonable and necessary to a competent defense of a lawsuit resulting from GAB's negligence. *Cf. Albertson's, Inc. v. Brady*, 475 So.2d 986, 988 (Fla.Dist.Ct.App.1985) (medical bills inadmissible in personal injury action unless plaintiff establishes that they relate to injuries resulting from accident at issue), *review denied*, 486 So.2d 595 (1986); *Mercy Hospital, Inc. v. Johnson*, 431 So.2d 687 (Fla.Dist.Ct.App.) (attorney not awarded fees absent showing services reasonable and necessary), *review denied*, 441 So.2d 632 (1983). Syndicate 627 must therefore have the opportunity to establish that its attorneys' fees were reasonable and necessary for a competent defense.

We conclude that *Hearn* and *Pitney-Bowes* control the present case. The issues at the "very heart" of this litigation are the liability, either actual or potential, of 627, and the reasonableness of a $250,000 settlement, for a horse purchased for $7,500, which died from poisoning under suspicious circumstances. Under these circumstances, "application of the privilege would ... den[y] the opposing party access to information vital to his defense." *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D.Wash.1975).

11. Despite this language, the court in *Home Ins. Co.* held that filing a claim for contribution does not waive the attorney-client privilege. The court distinguished such a case from those where the "party seeking to avoid discovery has injected into litigation issues going to the very *heart* of the litigation." *Id.* (emphasis in original) (citing *Hearn v. Rhay*, 68 F.R.D. 574 (E.D. Wash.1975); *Pitney-Bowes, Inc. v. Mestre*, 86 F.R.D. 444 (S.D.Fla.1980)).

IV. *Other Issues*

GAB challenges the district court's admission of billing statements introduced by 627 to show the attorneys' fees it incurred in defending the JDA Farms action. Syndicate 627 argues that the court erred in disallowing punitive damages and in excluding certain evidence, including the full testimony of two witnesses, some possible hearsay testimony of another witness and certain GAB business forms.

We have reviewed these contentions and have found no need to discuss them at length. GAB's complaint about the attorney billing statements concerned the fact that they had not been available for examination prior to trial. GAB can hardly claim unfair surprise if the statements are introduced on retrial. Similarly, although the district court excluded the testimony of 627's witness, Collins, on the ground of prejudice—his address had not been released to GAB during discovery—the circumstances on retrial might call for a different ruling. The court can also reach a different decision with regard to punitive damages if 627's proof on retrial supports such an award. Based on the proof introduced at the first trial, the court's decision was proper. *See, e.g., U.S. Concrete Pipe Co. v. Bould,* 437 So.2d 1061, 1064 (Fla. 1983) (punitive damages must be based on behavior indicating a "wanton disregard for rights of others").

The district court's rulings on the remaining evidentiary questions were within its discretion.

The judgment of the district court is AFFIRMED in part and REVERSED in part, and the case is REMANDED for proceedings consistent with this opinion.