619 F.2d 354
 Charles R. BURKE et al., Plaintiffs,
v.
Lawrence H. RIPP, Defendant-Appellant,
Reynolds Securities, Inc., Defendant-Appellee,
Economic Research Analysts, Inc. and Dora Development Corp.,
Defendants.
Helen G. LAVER et al., Plaintiffs,
v.
REYNOLDS SECURITIES, INC., Defendant-Appellee,
Lawrence H. Ripp, Defendant-Appellant.
 No. 77-3511.
 United States Court of Appeals,
Fifth Circuit.
 June 16, 1980.
 
 Guy K. Stewart, San Diego, Cal., for defendant-appellant.
 Smathers & Thompson, Mercer K. Clarke, Miami, Fla., for defendant-appellee.
 Appeal from the United States District Court for the Southern District of Florida.
 Before WISDOM, GOLDBERG and HENDERSON, Circuit Judges.
 HENDERSON, Circuit Judge:
 
 
 1
 This appeal is from a judgment of the United States District Court for the Southern District of Florida granting summary judgment to the appellee, Reynolds Securities, Inc., on its crossclaim for indemnification against the appellant, Lawrence H. Ripp, for amounts the appellee paid in settlement of a suit against it. The sole issue before us is whether, under the particular facts of this case, the appellee is required to establish actual or merely potential liability to the original plaintiffs in order to recover.[1] Our analysis of the relevant facts and law leads us to affirm the district court's determination that the appellee need only demonstrate its potential liability.
 
 
 2
 The parties submitted the following "Agreed Statement of the Case and Facts":
 
 
 3
 This appeal is from a summary judgment on a crossclaim for indemnity entered by the trial judge in favor of appellee Reynolds Securities, Inc., hereafter Reynolds, and against appellant Lawrence H. Ripp, hereafter Ripp. These consolidated cases were filed below on or about 10/7/75 and 11/30/75, respectively, by two families who purchased mortgages through Ripp while he was employed as an account executive for Reynolds and simultaneously as a solicitor for one or more mortgage brokers. Reynolds' primary defense to the plaintiffs' claims was that Ripp sold these mortgages to them outside the scope of his employment with Reynolds and outside the scope of his actual and apparent authority.
 
 
 4
 The initial complaints as amended named Reynolds and Ripp as defendants and consisted of 19 counts and 10 counts, respectively, alleging violations of the Federal and Florida securities laws for both fraud and failure to register securities, violations of the rules of the New York Stock Exchange and the National Association of Securities Dealers, common law fraud, negligence and breach of fiduciary duty. Plaintiffs sought rescission of the transactions or, alternatively, damages and, in any event, punitive damages. The total amount expended by all plaintiffs in the consolidated cases in purchasing these mortgages was $600,000.
 
 
 5
 After the complaints were served on Reynolds, Reynolds crossclaimed against Ripp for indemnity and attorneys' fees incurred in defending the suit brought by the original plaintiffs. Ripp entered his defense to the claims of the plaintiffs and to the crossclaim of Reynolds and was represented throughout pretrial proceedings.
 
 
 6
 An extensive amount of discovery and investigation was undertaken by the defendants, virtually all of which was conducted by Reynolds' attorneys who expended more than 1,500 hours through the conclusion of the trial proceedings. Ripp's counsel participated in the investigation and discovery to a much lesser extent and expended approximately 70 hours in defense of the matter.
 
 
 7
 Under Fla.Stat. § 517.21, interest at the rate set forth in the instrument from the date of sale as well as attorneys' fees are recoverable where a violation of the Florida Blue Sky laws is found to exist. The exposure to the co-defendants at the time of trial was approximately $900,000, not including any allocation for punitive damages.
 
 
 8
 After eight days of trial, Reynolds settled with all plaintiffs in the total amount of $349,500. The serious negotiations which resulted in the settlement occurred during the evening of the last day of trial. Plaintiffs' and Reynolds' claims against Ripp, personally, previously had been severed. Counsel for the plaintiffs and for Reynolds, after consulting with their respective clients, arrived at the agreed figure. Reynolds' counsel telephoned Ripp's counsel and advised him that a settlement in the above amount had been reached between Reynolds and the plaintiffs. Without detailing the sequence of events, the parties agree that, throughout these negotiations, Reynolds' counsel kept Ripp's counsel advised of the existence of the negotiations but never sought his approval or participation. Ripp's counsel never asked to participate nor did he express at any time approval or disapproval.
 
 
 9
 On the next day the parties appeared before Judge Atkins through their respective counsel and announced on the record the terms of the settlement agreement. Ripp's counsel was physically present in the courtroom at the time and made no statements indicating either approval or disapproval.
 
 
 10
 After the settlement was announced, the trial was concluded. Reynolds thereafter moved for summary judgment against Ripp on the amount of the settlement and Reynolds' attorneys' fees. After the issues were briefed, the court granted Reynolds' motion and entered summary final judgment in the amount of $516,448.00 which included the settlement and attorneys' fees. The parties agree that the attorneys' fees are reasonable.
 
 
 11
 Although we welcome the aid of a stipulated set of facts, we are also somewhat hindered in the present case in that the foregoing statement contains essentially all of the information available to us. An examination of the entire record has supplied few, if any, details. Consequently, we are forced to apply the relatively sparse law on this subject to the outline of the fact situation now before us.
 
 
 12
 Of the general knowledge we do possess, the most important factors are that (1) counsel for Reynolds did not invite Ripp's counsel to participate in the settlement negotiations; (2) counsel for Reynolds did keep Ripp's counsel advised at all times of the existence and the progress of the settlement negotiations; (3) Ripp's attorney never expressed a desire to participate in the negotiations; (4) counsel for Reynolds informed Ripp's attorney of the settlement figure but did not expressly seek his approval; (5) Ripp's counsel expressed neither approval nor disapproval when informed of the settlement, and also remained silent in court on the following day when the terms of the settlement were dictated into the record; (6) at no time did Reynolds tender the defense of the original action to Ripp. It is against this factual background that we analyze the existing case law relevant to our inquiry. We note at the outset that we are concerned only with cases where the original defendant settled with the original plaintiff. To be distinguished are cases where the claim for indemnity is founded on a judgment or a written contract.
 
 
 13
 The appellant relies heavily on the Sixth Circuit opinion in Tankrederiet Gefion A/S v. Hyman-Michaels Co., 406 F.2d 1039 (6th Cir. 1969). There, the indemnitor knew that the indemnitees and the original plaintiffs were conducting settlement negotiations, and apparently it had been invited to participate. Nevertheless, the indemnitees never disclosed the terms of the settlement to the indemnitor nor asked for its approval. More crucial to the court's decision, however, was the fact that the indemnitees did not tender the defense to the indemnitor in exchange for a hold-harmless agreement. In light of these omissions, the court upheld the district court's interlocutory order requiring the indemnitees to establish actual liability, stating that such a holding was in accordance with "the general rule that an indemnitee must show actual liability to recover against an indemnitor." Id. at 1042 (citations omitted).
 
 
 14
 This court readily required a showing of the indemnitee's actual liability under facts which were much more compelling than those present in Tankrederiet Gefion. In Whisenant v. Brewster-Bartle Offshore Co., 446 F.2d 394 (5th Cir. 1971), the indemnitor had no notice of the settlement negotiations until the settlement had already been concluded. The indemnitee neither tendered the proposed settlement to the indemnitor for approval, nor offered it the defense of the claim. As an additional twist, the indemnitee amended its third-party complaint to include a new theory of liability which had never been alleged in the original action. Moreover, the record in Whisenant strongly suggested that the indemnitor would have chosen to contest the original claim had it been given the opportunity to do so. The district court entered judgment against the indemnitor solely on a finding that the settlement was reasonable. Consequently, the case was remanded for a determination of actual liability, but the holding was carefully limited as follows:
 
 
 15
 We conclude, therefore, that under these facts and in the circumstances of this case, the finding of the trial court that the settlement between (the indemnitee) and (the original plaintiff) was reasonable is not sufficient to support a judgment against (the indemnitor) since defense of the (original) claim was not tendered to it and (the indemnitor) was not given the opportunity to review, pass upon, or participate in the settlement itself.
 
 
 16
 Id. at 403 (emphasis in the original).
 
 
 17
 We again confronted the actual-versus-potential liability issue in the case of Parfait v. Jahneke Service, Inc., 484 F.2d 296 (5th Cir. 1973), and held that, under the circumstances presented there, a demonstration of potential liability was sufficient. Citing Tankrederiet Gefion, the panel noted that this circuit has not "unreservedly adopted the 'general rule' of the Sixth Circuit 'that an indemnitee must show actual liability to recover against an indemnitor.' " Id. at 304. The procedure seemingly mandated by Tankrederiet Gefion was discussed approvingly by this court as follows:
 
 
 18
 A practical device by which an indemnitee can protect himself against the awkward possibility of having to prove the original plaintiff's case against himself, the original defendant, is to offer the indemnitor before any settlement is concluded the choice of (1) approving the settlement or (2) taking over the defense of the case and agreeing to hold the indemnitee harmless in any event for damages which may be assessed against him in excess of the amount of the proposed settlement.
 
 
 19
 Id. at 304-305. However, instead of imposing a rigid requirement that the indemnitee offer this precise choice, we looked to see if the indemnitor had been "afforded substantially the same protection as if the Tankrederiet Gefion procedure had been followed." Id. at 305. Thus, although the indemnitee in Parfait neglected to tender the final settlement figure to the indemnitor for approval, this omission was deemed to be of little consequence because the indemnitor had been continuously informed of the progress of the settlement negotiations and had failed to object to settlement on the terms contemplated. Furthermore, although the indemnitee did attempt to tender the defense of the action to the indemnitor in exchange for a hold-harmless agreement, there was some question as to whether the communication containing the formal offer of the defense reached the indemnitor before the settlement was concluded.[2] Looking to substance rather than form, we noted that the indemnitor had the opportunity to contest the original claim and declined to do so. Our application of "equitable indemnity principles" led us to the conclusion that, in all fairness to the indemnitor, the circumstances did not require proof of actual liability. We specifically distinguished Parfait from the Whisenant case, where the indemnitor had been placed in a situation which was patently unfair.
 
 
 20
 Our task, then, is to determine whether the circumstances under which Reynolds settled the original claim were such that Ripp may, in fairness, be compelled to reimburse Reynolds upon a demonstration of potential, as opposed to actual, liability. The district court found that Ripp was afforded a sufficient opportunity to approve or disapprove the contemplated settlement and, in effect, that he acquiesced by his silence. We tend to agree. Ripp was concededly advised at all times that settlement negotiations were being conducted. Although we have no way of knowing what words were actually exchanged during the telephone conversation between the parties' respective counsel, we do know that Ripp's attorney was informed of the proposed settlement and that he voiced no objection. Similarly, when the terms of the settlement were dictated into the record on the following day, Ripp's counsel, although present, remained silent. His explanation for his silence is that he needed more time "to think it over." However, we do not believe that it is unreasonable to expect an attorney in such a position to indicate in some way any hesitations or doubts he might have as to the propriety of the impending settlement.[3] Nor is Ripp's unresponsiveness in this regard explained or justified by the fact that the claim and crossclaim against him were severed from the main action. Such severance had no compromising effect on the notice afforded Ripp, and he was certainly aware that the settlement of the claim against Reynolds would substantially affect the adjudication of the crossclaim for indemnity. Moreover, Ripp requested the severance and he has never even suggested that he was prejudiced thereby. In short, although we do not condone Reynolds' failure to expressly seek Ripp's approval of the settlement, we conclude that here, as in Parfait, this omission was not serious under the totality of the circumstances.
 
 
 21
 We next consider Reynolds' failure to tender the defense of the claim to Ripp in exchange for a hold-harmless agreement. Ripp maintains that a tender of the defense is indispensable to the satisfaction of the indemnitor's due process rights. The obvious source of this proposition is the following general principle first enunciated in Jennings v. United States, 374 F.2d 983, 986 (4th Cir. 1967): "The indemnitee's unilateral acts, albeit reasonable and undertaken in good faith, cannot bind the indemnitor; notice and an opportunity to defend are the indispensable due process satisfying elements." This principle has been reiterated in every opinion discussed herein. In order to understand its application to the facts of the instant case, however, it is necessary to consider the contexts in which this statement was originally made and in which it has been repeated.
 
 
 22
 In Jennings, supra, several negligence actions arising out of an automobile collision were brought against a deceased motorist's estate. The decedent's insurer accepted a settlement offer from the original plaintiffs. While this litigation was pending, the decedent's widow successfully sued the United States under the Federal Tort Claims Act for negligent construction and maintenance of the highway on which the accident occurred. The decedent's insurer then sought indemnification from the United States. Even though the government conceded its own negligence and the reasonableness of the settlement, the court affirmed the district court's judgment in favor of the United States because the indemnitee had not notified the government of the pendency of the original actions. The government's position, and that adopted by the court, was stated as follows: "While the United States does not dispute that a knowing failure to participate in the initial suits would have bound it to a reasonable settlement, it argues that lack of notice puts the indemnitee to his proof of actual liability in the present action." 374 F.2d at 985. Since the insurer had stipulated that the decedent was not contributorily negligent, it could not prove actual liability and its right to indemnity was foreclosed.
 
 
 23
 It is apparent that the Jennings court never held, or even implied, that a tender of the defense was an indispensable due process requirement. An opportunity to defend was considered necessary, but in that court's view the opportunity was derived from mere notice that an action against the indemnitee has been commenced. The indemnitor's failure to participate after receiving such notice would amount to a waiver of the right to defend the original claim:
 
 
 24
 The reasoning is that where an indemnitor is notified and can take part in indeed may control the litigation, he is precluded from contesting the indemnitee's liability in the subsequent indemnity action. The indemnitor's knowing failure to participate is deemed a consent to representation by the indemnitee, thus forming the predicate for application of the rule that a litigant is entitled only once to his day in court. Lack of notice, however, destroys the consensual element, vitiates the binding effect of the judgment, and entitles the indemnitor to be heard on the issue of the indemnitee's liability. The indemnitee's unilateral acts, albeit reasonable and undertaken in good faith, cannot bind the indemnitor; notice and an opportunity to defend are the indispensable due process satisfying elements.
 
 
 25
 Id. at 986 (emphasis added).
 
 
 26
 Thus, in its original context, the term "opportunity to defend" did not have the meaning which is presently urged upon the court. Furthermore, although our concept of the "opportunity to defend" may differ from that of the Fourth Circuit, we have never expressly equated it with the formality of a tender of the defense. In Whisenant, we found that the indemnitor, although a third-party defendant to the original suit, had been denied the opportunity to defend because the indemnitee had settled the claim without giving it notice. In that case, the failure to tender the defense was one of several factors which led to the decision to require proof of actual liability. We did not decide whether this omission would be of critical importance if the indemnitor had been given ample notice of the settlement. On the other hand, we concluded in Parfait that the indemnitor did have a clear opportunity to challenge the indemnitee's liability. Although the record in that case indicated that the formal tender of the defense may not have reached the indemnitor before the settlement was finalized, the indemnitor was fully aware of the progress of the settlement negotiations and there had apparently been some informal communication between the parties concerning the possibility of the indemnitor taking over the defense. Finally, we note that even in Tankrederiet Gefion, where the Sixth Circuit found the indemnitee's failure to tender the defense to be so crucial, the court indicated in the concluding paragraph of its opinion that the outcome may have been different if the indemnitor had been given the opportunity to approve the settlement. 406 F.2d at 1044.
 
 
 27
 In this case, we may safely say that Ripp's lack of "opportunity to defend" had very little to do with Reynolds' failure to formally tender the defense in exchange for a hold-harmless agreement. Aside from possible financial limitations,[4] it is extremely unlikely that Ripp was adequately prepared to defend the claim. The record indicates that the trial had been underway for eight days at the time the settlement was reached. At this point, Ripp's counsel had spent approximately 70 hours in connection with the defense of the claim, in comparison with the 1500 hours expended by Reynolds' attorneys. Thus, as distinguished from a case such as Whisenant, there is no indication here that Ripp would have seriously considered taking over the defense of the claim.
 
 
 28
 Under the totality of the circumstances presented here, we hold that the appellant was adequately protected by his continuing notice of the progress of the negotiations, his opportunity to approve or disapprove the settlement, and his apparent acquiescence in its terms.[5] We have found no considerations which, in fairness to the appellant, call for a demonstration of actual liability. Our decision is based on the equities as we perceive them, and is again limited to the particular facts before us. We reiterate that an indemnitee can best protect himself and his indemnitor by offering the indemnitor the choice of approving the settlement or taking over the defense, and we strongly suggest that future would-be indemnitees adhere to this procedure.
 
 
 29
 The summary judgment on the crossclaim for indemnity is
 
 
 30
 AFFIRMED.
 
 GOLDBERG, Circuit Judge, specially concurring:
 
 31
 I write to clarify the relationship between the court's holding in this case and those of the prior decisions discussed in the majority opinion. In particular, I write to ensure that future potential indemnitors and indemnitees understand which steps will make proof of actual liability necessary, and those which will necessitate proof of potential liability.
 
 
 32
 I understand our present holding to be that a settling indemnitee can recover from an indemnitor upon proof of the indemnitee's potential liability if the settlement terms are reasonable and if the indemnitor has notice of the suit, has notice of the settlement terms, and has failed to object to those terms even though he has had a reasonable opportunity to approve or disapprove the settlement. Thus, when the indemnitor has notice of the settlement terms, he has the burden of expressing his objection to that settlement. If he fails to object, he is liable for indemnity upon proof of potential liability. If he does object, however, he cannot be held liable for indemnity without proof of the indemnitee's actual liability unless the indemnitee offers the defense of the action to him. See Whisenant v. Brewster-Bartle Offshore Co., 446 F.2d 394, 403 (5th Cir. 1971). If the indemnitee does offer the defense of the suit to the indemnitor, the indemnitor refuses this offer, and the indemnitee settles, then only proof of potential liability is required to obtain indemnification. See id.
 
 
 33
 I have great doubt that before the decision in this case Ripp "was certainly aware that the settlement of the claim against Reynolds would substantially affect the adjudication of the cross-claim for indemnity." Majority Opinion, supra, 619 F.2d at 358. However, since I cannot affect the result in this case, I will not address this problem of the retroactive application of the rule announced in this case.
 
 
 
 [1]
 The appellant does not challenge the district court's conclusion that the appellee was potentially liable to the original plaintiffs. Nor has he adequately raised on appeal the issue of the reasonableness of the settlement
 
 
 [2]
 See 484 F.2d at 305 n. 8
 
 
 [3]
 Ripp's counsel stated unequivocally at oral argument that the original plaintiffs had a "bad case" and that in no event would he have settled. Of course, we need not evaluate such an assertion in the context of this appeal, nor could we do so on the record before us. However, counsel's remarks along these lines only serve to bolster our conclusion that he had ample opportunity to express his objections or doubts
 
 
 [4]
 In discussing the hold-harmless device, the Tankrederiet, Gefion court stated that it "assume(d) that such a hold-harmless agreement would constitute (the indemnitor's) financially responsible guarantee that (the indemnitee) would under no circumstances be forced to pay more than the sum for which it was prepared to settle." 406 F.2d at 1043. In explanation of its failure to tender the defense to Ripp, Reynolds maintains that, due to the enormity of its exposure, Ripp could not conceivably have given his "financially responsible guarantee" that Reynolds would not be forced to pay more than the settlement figure. Although this assertion may be valid, the only possible support for it found in the record is a statement made by Ripp in his July 5, 1977, Motion to Amend to the effect that he would not be able to afford the supersedeas bond which would be required for a full appeal if he were to go to trial and lose. We decline to infer from this comment alone that Ripp was financially incapable of entering into a hold-harmless agreement. Hence, no speculation as to Ripp's ability to hold Reynolds harmless enters into our decision in this case
 
 
 [5]
 Accord Central National Insurance Company of Omaha v. Devonshire Coverage Corp., 565 F.2d 490, 495-96 (8th Cir. 1977), where the Eighth Circuit reached a similar result. However, there the indemnitor expressly indicated its approval of the settlement terms