UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 95-30933
Summary Calendar
_____


REYNOLD P. BOURG, SR., ETC.,

Plaintiff,

versus

CHEVRON U.S.A. INC., ET AL.,

Defendants.


_____


CHEVRON U.S.A. INC.,

Third Party Plaintiff-Appellee,

versus

McCALL ENTERPRISES INCORPORATED, ET AL.,

Third Party Defendants,

McCALL ENTERPRISES INCORPORATED; NORWICH UNION FIRE
INSURANCE SOCIETY LIMITED; ZURICH RE (U.K.); HANSA MARINE
INSURANCE CO. U.K. LTD.; VESTA U.K. INSURANCE CO. LTD.; LEGAL &
GENERAL ASSURANCE SOCIETY LIMITED,

Third Party Defendants-Appellants.


_____

Appeal from the United States District Court
for the Western District of Louisiana
(CA-93-0472)
_____
June 21, 1996
Before DAVIS, BARKSDALE, and DeMOSS, Circuit Judges.

PER CURIAM:[*]

McCall Enterprises, Inc., and its underwriters (collectively "McCall") contest being required to indemnify Chevron U.S.A. Inc. for defense costs and the amount paid by Chevron to settle a personal injury claim brought against it by an employee of a subcontractor of Chevron who allegedly was injured when boarding McCall's vessel, which was under time charter to Chevron. We **AFFIRM**.

I.

In 1990, Chevron and McCall entered into a time charter; McCall was to provide vessels for transporting persons and property to and from Chevron's oil and gas platforms in the Gulf of Mexico. The time charter provided that McCall would defend and indemnify Chevron from liability for personal injury "arising out of or in anyway directly or indirectly connected with the performance of service" under the time charter, including "transportation of passengers" and "loading or unloading of passengers". As required by the time charter, McCall named Chevron as an additional assured on its liability insurance policies.

In March 1992, Reynold Bourg, a welder employed by a Chevron subcontractor, allegedly was injured when he transferred, via swing rope, from a Chevron platform to a McCall vessel operating pursuant

[*] Pursuant to Local Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

to the time charter. Bourg filed suit against McCall and Chevron, claiming that their negligence caused his injuries. Chevron filed a third party complaint against McCall, seeking defense and indemnity pursuant to the time charter.

The district court granted Chevron's motion for summary judgment on the third party complaint, holding that the time charter indemnity provision unambiguously obligated McCall to defend and indemnify Chevron. One week before trial, Chevron settled with Bourg for $75,000, and moved for approval of the settlement. (Following trial of Bourg's action, judgment was entered for McCall.) The district court approved the settlement, holding that Chevron was potentially liable to Bourg in an amount far in excess of the settlement.

## II.

McCall contends that Bourg's claim against Chevron was not within the scope of the indemnification clause and, alternatively, that the district court erred by ordering reimbursement of the settlement amount based on Chevron's potential, rather than actual, liability. Of course, we review the summary judgment *de novo*, applying the same standard as the district court. *E.g.*, **Douglass v. United Services Automobile Ass'n**, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc). Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law".  FED. R. CIV. P. 56(c).

A.

The indemnity provision provides:

> [McCall] hereby agrees to fully indemnify and hold [Chevron] forever harmless, and to undertake to defend [Chevron] of and from any and all liabilities, losses, damages, and costs, of whatsoever nature or kind, for personal injury or death, ... arising out of or in any way directly or indirectly connected with the performance of service under this agreement or the ownership, maintenance, management, operation, transportation of passengers, ... *loading* or unloading *of passengers* or navigation of the vessel, and whether or not caused or contributed to by the negligence, strict liability or fault of [Chevron], or of any person or party for whose acts [Chevron] is or may be liable.

(Emphasis added.)

McCall contends that Bourg's claim against Chevron is not covered because the indemnity provision does not specify that indemnification for personal injury extends to injuries to employees of third parties, nor does it state with sufficient specificity that injuries occurring when the vessel is serving as nothing more than an "inert locale" are within its scope.

A charter agreement for a vessel is a maritime contract, to be construed according to maritime law.  *See* **Fontenot v. Mesa Petroleum Co.**, 791 F.2d 1207, 1214 (5th Cir. 1986).  Under federal maritime law,

- 4 -

> a contract of indemnity should be construed to cover all losses, damages, or liabilities which reasonably appear to have been within the contemplation of the parties, but it should not be read to impose liability for those losses or liabilities which are neither expressly within its terms nor of such a character that it can be reasonably inferred that the parties intended to include them within the indemnity coverage.

*Id*. at 1214 (brackets and citation omitted).

The indemnity provision is clear and unambiguous. It contains no language limiting covered passengers to Chevron employees, nor does it exclude coverage when the vessel is an "inert locale". To the contrary, Bourg's claim that he was injured while boarding the McCall vessel is encompassed by the plain language of the agreement ("loading ... of passengers").

### B.

### 1.

"The general rule requires an indemnitee to show actual liability on his part to recover against an indemnitor". *Fontenot*, 791 F.2d at 1216. However, "a defendant need only show potential (rather than actual) liability to recover indemnity where either (1) the defendant tenders the defense of the action to the indemnitor; (2) the claim for indemnity is founded upon a judgment; (3) the defendant's claim is based on a written contract of insurance or indemnification". *Id*. at 1216-17. McCall asserts that, because Chevron failed to give adequate notice of its intention to settle with Bourg, equitable indemnity principles

- 5 -

required Chevron to show actual, rather than potential, liability in order to be indemnified for the settlement amount. Chevron counters that it was not required to notify McCall of the settlement because its claim was based upon a written contract of indemnity; but that, in any event, it notified McCall of Bourg's offer and settled only after McCall refused to act.

The cases relied on by McCall concerning equitable indemnification principles are distinguishable, because they did not involve claims for indemnity based on written contracts. *See, e.g.*, **Molett v. Penrod Drilling Co.**, 826 F.2d 1419 (5th Cir. 1987) (tort-based indemnity claim); **Burke v. Ripp**, 619 F.2d 354 (5th Cir. 1980) (tort-based indemnity claim); **Parfait v. Jahncke Service, Inc.**, 484 F.2d 296 (5th Cir. 1973) (claim for indemnity based on implied warranty of workmanlike performance), *cert. denied*, 415 U.S. 957 (1974); and **Whisenant v. Brewster-Bartle Offshore Co.**, 446 F.2d 394 (5th Cir. 1971) (claim for indemnity based on implied warranty of workmanlike performance). In **Parfait**, our court distinguished indemnity claims based on written contracts:

> The actual-versus-potential liability problem is unique to cases in which the original defendant (indemnitee) has settled with the original plaintiff without giving the third-party defendant (indemnitor) an opportunity to approve the amount of the settlement or to conduct the defense, and in which traditional indemnity principles are not modified by express contract between the parties.

**Parfait**, 484 F.2d at 304; *see also* **Molett**, 826 F.2d at 1429 ("if

the indemnitee's claim is founded on judgment or on a written contract establishing some other basis for indemnification", indemnitee is not required to prove actual liability or that indemnitor was not prejudiced by indemnitee's failure either to inform indemnitor of settlement negotiations or tender it defense of suit); *Burke*, 619 F.2d at 356 (distinguishing "cases where the claim for indemnity is founded on a judgment or a written contract").  Accordingly, because Chevron's indemnity claim is based on a written contract, the claimed inadequacy of its notice to McCall of its intention to settle does not require that it prove actual, rather than potential, liability.

### 2.

In the alternative, McCall contends that Chevron presented insufficient evidence to establish potential liability.  A court confronted with a valid indemnity agreement "should insure that the claim was not frivolous, that the settlement was reasonable, that it was untainted by fraud or collusion, and that the indemnitee settled under a reasonable apprehension of liability".  *Fontenot*, 791 F.2d at 1218.

Bourg claimed that Chevron was negligent (1) because it required him to transfer from the platform to the vessel via swing rope in rough seas, and (2) because Chevron's employee, Theriot, grabbed Bourg's work vest when Bourg attempted to land on the deck of the vessel, preventing him from landing properly or from

- 7 -

swinging back to the platform.  Theriot died prior to the trial of Bourg's action.  And, prior to that trial, the district court denied Chevron's motion *in limine*, in which it sought to exclude Theriot's statement to Bourg, shortly before the incident, that because the seas were rough, they would have used a helicopter, instead of the vessel, if one were available.

In support of its assertion that Chevron had no potential liability based on the alleged rough sea conditions, McCall relies heavily on the jury's finding that McCall was not negligent in causing Bourg's injury.  But, because Chevron made the decision to settle with Bourg prior to that trial, the jury's verdict absolving McCall of negligence is not relevant to an evaluation of Chevron's potential liability.  McCall points out, too, that Bourg, in his first deposition, did not claim that Theriot's grabbing his work vest contributed to cause his injury, and made such a claim for the first time in his second deposition.  Although that inconsistency obviously might have some impeachment value and thus impact on a jury's credibility determination, it is insufficient to negate Chevron's potential liability.

## III.

For the foregoing reasons, the judgment is

*AFFIRMED.*