QST v. National Union Fire Ins.          CV-98-572-M    05/28/02
                    UNITED STATES DISTRICT COURT

                    DISTRICT OF NEW HAMPSHIRE


QST Environmental, Inc.
f/k/a Environmental Science
      & Engineering, Inc.,
      Plaintiff

      v.                                    Civil No. 98-572-M
                                            Opinion No. 2002 DNH 105
National Union Fire Insurance Company
      of Pittsburgh, PA; and
United National Insurance Company,
      Defendants


                         **O R D E R**


      The plaintiff, QST Environmental, Inc. ("ESE"), brings

breach of contract, including breach of the duty of good faith

and fair dealing, claims against National Union Fire Insurance

Company ("National") and United National Insurance Company

("UNIC").  ESE's claims are based on its status as an "additional

insured" on policies issued by National and UNIC to OHM

Remediation Services ("OHMRS") and arise from the settlement of

an underlying tort suit.  ESE and both defendants move for

summary judgment.

## Background

EnergyNorth Natural Gas, Inc., entered into a contract with ESE related to hazardous waste remediation at its property in Concord, New Hampshire. ESE in turn contracted with OHMRS to perform related work at the site. ESE's contract with OHMRS included an indemnification provision as well as a requirement that ESE be named as an additional insured on OHMRS's relevant insurance policies. OHMRS was insured under a commercial general liability policy issued by National and an umbrella liability policy issued by UNIC. ESE was in fact included as an additional insured on both policies.

In May of 1994, Thomas Shoemaker, an employee of OHMRS, was severely injured while working on the remediation project at the EnergyNorth site. His parents brought suit on his behalf, alleging claims against EnergyNorth, ESE, and OHMRS' parent company (Shoemaker's employer, OHMRS was immune under the worker's compensation bar). Shoemaker claimed ESE was negligent in supervising OHMRS, committed engineering malpractice, breached a non-delegable duty, and was vicariously liable for the negligence of OHMRS.

2

National agreed to defend ESE in the <u>Shoemaker</u> action, subject to a reservation of rights. The parties engaged in private mediation in August of 1998. ESE did not participate in the settlement negotiations in its own right, but only through the insurance carriers.

In September of 1998, National tendered its policy limit of $1,000,000.00 to UNIC, and UNIC took over the defense of the case. ESE declined to contribute its own funds to settle all of Shoemaker's claims. Late in September, Shoemaker settled his claims against defendants, except ESE, for $7,900,000.00. The settling parties executed a release. The claims against ESE based on theories of vicarious liability (Counts III and IV in the <u>Shoemaker</u> complaint) were resolved and ESE was released from liability as to those claims.

Shoemaker continued to pursue his distinct claims against ESE for negligence (Count I) and engineering malpractice (Count II). UNIC refused to provide ESE with a defense or coverage as to those claims. ESE and Shoemaker later settled those remaining claims. ESE, itself, paid Shoemaker $225,000 to settle the

3

engineering malpractice claim. ESE's commercial general liability insurer, Illinois National Insurance Company, paid Shoemaker $825,000 to settle the discrete negligence claim against ESE.

ESE subsequently sued OHMRS, asserting claims for indemnity and breach of the duty of good faith and fair dealing. In the release executed as part of the settlement with Shoemaker, however, ESE relinquished any claims for indemnification against OHMRS. Accordingly, ESE amended its complaint, withdrawing the indemnification claim against OHMRS. ESE also sued UNIC and National, alleging breach of contract and breach of the duty of good faith and fair dealing. The two suits were consolidated into the present action. In the course of the litigation, ESE's claim against OHMRS, OHMRS's counterclaim against ESE, and UNIC's counterclaim against ESE were dismissed. Only ESE's claims against UNIC and National remain.

## Discussion

ESE's claims against UNIC and National allege breach of contract and breach of the duty of good faith and fair dealing.

ESE says that because it was an additional insured on the UNIC and National Insurance policies issued to OHMRS, UNIC and National owed ESE a defense and indemnification with regard to Shoemakers' distinct negligence claim against ESE.[1]  ESE also claims that UNIC and National breached the duty of good faith and fair dealing by favoring OHMRS, and prejudicing ESE's ability to settle the claims against it that were not covered by UNIC and National.  ESE moves for summary judgment on liability only. UNIC and National move for summary judgment in their favor on all of ESE's claims.

UNIC and National raise a preliminary issue regarding ESE's standing to bring these claims because ESE's own liability insurer, Illinois National Insurance Company, actually paid the settlement amount to resolve Shoemaker's negligence claim against ESE.  In addition, Illinois National paid ESE's defense costs, to the extent those costs were not covered by National and UNIC.  By seeking summary judgment on liability only, ESE may be trying to

---

[1]  ESE concedes that neither the UNIC policy nor the National policy provided coverage for the engineering malpractice claim.

avoid the question of loss. But ESE's loss in this context is not a question of damages, but one of standing.[2]

"Every action shall be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a). "the general rule in federal court is that if an insurer has paid the entire claim of its insured, the insurer is the real party in interest under Federal Rule of Civil Procedure 17(a) and must sue in its own name."[3] Krueger v. Cartwright, 996 F.2d 928, 931-32 (7th Cir. 1993)(citing United States v. Aetna Casualty & Surety Co., 338 U.S. 366, 380-81 (1949)). When an insurer pays only part of the loss and the insured pays part, both the insurer and the insured must bring their claims in the litigation in their own names. Aetna, 338 U.S. at 381-82.

---

[2]  The collateral source rule, relied on by ESE to avoid the standing issue, applies only to preserve an award of damages and does not affect a party's standing to litigate a claim. See Concord Hosp. v. N.H. Med. Malpractice Joint Underwriting Ass'n, 142 N.H. 59, 61 (1997); Cyr v. J.I. Case Co., 139 N.H. 193, 196 (1994).

[3]  Similarly, under New Hampshire law, subrogation rights may arise from contract provisions or from the equitable subrogation doctrine. See DeLellis v. Burke, 134 N.H. 607, 610 (1991); Dimick v. Lewis, 127 N.H. 141, 144 (1985).

In this case, it is undisputed that Illinois National provided the defense to Shoemaker's independent negligence claim against ESE (to the extent the defense was not paid for by UNIC and National) and it paid the amount owed in settlement. As a result, ESE has sustained no loss from the alleged breach of contract and breach of the duty of good faith and fair dealing, related to the Shoemaker's independent negligence claim, can only be asserted by Illinois National.

Illinois National is not a party to this suit. Rule 17(a) directs that an action not "be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest . . . ." In an affidavit submitted by National, Gary A. Almeida, speaking on behalf of Illinois National, states that he has not authorized ESE or its counsel "to take any action to recover any of the sums paid by Illinois National to settle the Shoemaker litigation" or to recover defense costs incurred in that case.[4] Almeida further states

_____

[4] Gary Almeida is a Complex Claims Director with AIG Claims Services, Inc. and handled the Shoemaker litigation against ESE

7

that Illinois National does not seek to recover either the sums paid in settlement or the costs of litigation.  Cf. Allwaste Envtl. Serv. v. Pastore, 911 F.Supp. 29, 31-32 (D.ME. 1996).

Therefore, since Illinois National is not and will not be a party, the breach of contract and breach of the duty of fair dealing claims are dismissed.

Although ESE would have standing to pursue its engineering malpractice related claims, it does not argue that the National and UNIC policies covered that claim.  Therefore, ESE's claims of breach, based on Shoemaker's engineering malpractice claim against it, are deemed waived.

ESE argues that its claims against UNIC and National also include "any increased liability to ESE for non-covered claims cause by the Defendants' bad-faith conduct during the Shoemaker settlement negotiations."  Reply Mem. at 6.  ESE's breach of contract and breach of good faith claims against UNIC and National, the only claims alleged by ESE against UNIC and

under the ESE policy issue by Illinois National.

8

National, must arise from an enforceable contract. ESE concedes that Shoemaker's engineering malpractice claim was not covered by the defendants' policies. Therefore, the defendants did not breach any duty owed under the policies or breach any good faith obligations, which necessarily must relate to their policy obligations. See, e.g., Ahrendt v. Granite Bank, 144 N.H. 308, 312-13 (1999)(citing Centronics Corp. v. Genicom Corp., 132 N.H. 133, 143 (1989)).

ESE is without standing to pursue claims arising from the defendants' failure to provide a defense or indemnify the amount paid to Shoemaker's independent negligence claim against it. ESE concedes that the defendants' policies did not provide coverage for the engineering negligence claim. Therefore, ESE's claims against defendants arising from Shoemaker's independent negligence claim against ESE are dismissed for lack of standing. UNIC and National are entitled to summary judgment as to all other claims against them.

## Conclusion

For the foregoing reasons, the plaintiff's motion for summary judgment (document no. 58) is denied. The defendants' motions for summary judgment (documents no. 57 and 59) are granted as is more fully set forth in this order.

The clerk of court shall enter judgment accordingly and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

May    , 2002

cc:  James C. Wheat, Esq.
     Margaret H. Nelson, Esq.
     Gordon A. Rehnborg, Jr., Esq.

10